Ms. Kirsch Goodwin. Thank you, Your Honors. Good morning and may it please the Court. My name is Lori Kirsch Goodwin and I am here on behalf of Defendant Appellants. The District Court clearly erred in the factual determinations and findings and substituted his own judgments and opinions for those of the ALJ, which in this case the ALJ did have the knowledge and experience despite Judge Wake's comments that she did not. In ARS 41109201, it expressly states that under the Arizona Office of Administrative Hearings that the judges that are assigned to certain cases, and in this case back at this time there were only three ALJs that did special education law. Now there are only two, but at the time there were three, and those three developed and implemented and went to programs to know about the special education. Can I ask sort of a real preliminary question? At District Court, the dispute seemed to be between whether A.T. should be placed with ACES. Is that right? The truth of the matter is that it was just whether or not ACES was appropriate. A secondary issue we asked for. The parents thought that the Gateway Academy was better for their child. Or a school like Gateway as opposed to a school like ACES. And do I understand correctly that the child is now at Aurora Day School? That is correct. And are the parents happy with that? The parents are very happy with that. The team, as I understand, is happy with that. At the last IEP meeting, everybody said he's in the right place. Can I stop you just for a second? Do something unusual. What's your position on that? With respect to his current placement, Your Honor, from the position of the charter school and just the school systems in general, Your Honor, we think it's important to have a finding, as we did with the District Court, that when the school district is made a placement that is in fact in compliance with the IDEA. That's your law point. That is the law point, and that is really why we're here. Does the school district think Aurora is an inappropriate place for the child to be? Again, Your Honor, that's not really the issue. You want to argue the law? I was about to argue the law. I can tell you that at the last IEP meeting it was agreed that it was an appropriate placement. There were four issues, I believe, that the District Court clearly erred with regard to the facts. The first one being the availability of ACES at the time. As you may recall, the District Court stated that the school would be ready in maybe a week or two. That is not true. That is not appropriate for the record. In fact, ACES was not known to have availability at that time, and Gay Hardy testified at the hearing that she did not know at the time that the child was placed there when he would be able to attend there. At the time there were 14 students in the class, which is the limit for the Department of Education in Arizona, and it was two over the school's own limit. They only wanted 12 children in the class. A.T. would have been the 15th student, and Gay Hardy did not know when that teacher was going to be done training and open her classroom. Despite the fact that Point has expressed in their brief and the judge had expressed in his opinion that the school would be open in a week or two, we truly don't know that. So at the time that the child was placed there, which the initiation date was January 22nd, according to ER 326, that's the IEP, stated that he was supposed to start at ACES on January 22nd. As of the 23rd, Gay Hardy still didn't know when that class would be open, so he would not have access to a free, appropriate public education at that time at ACES. He needed to go to another school. So as far as availability, we believe that the district court made clear error. With regard to transitions and the IEP, again, transitions at ACES were going to be for half a day, and I understand Judge Wake said that it wouldn't actually be a whole half a day, and that's true. The child would not be moving around for half a day, but during a half of the day, he would be changing classes to go to academics, and that would not meet his unique needs. Despite the fact that Judge Wake stated that the IEP had embedded in it the goals of transition, that is not true. The goals clearly did not have transition in them, and that can be seen by looking at the IEP and the addendum. However, what can be seen, if you look at the stranger test for the IEP, is that he did have problems with transitions. And so if it's not a goal, even though the parents and the advocate had asked for it to be, then it's a problem. And if it's a problem, then he should not be forced to have to attend to them half of the day each day. The IEP team is supposed to consider the strains of the child, the parents' concerns, the evaluation results, academic development, and functional needs of a child, and that's 34 CFR 300-324. So if we're supposed to be looking at the child's needs, and the purpose of FAPE under PARCC is that we address the child's unique needs, and in this case, the child had transition issues, we provide adequate support for those services, he shouldn't be transitioning for half the day, and it should be in accord with his IEP. And since there's no goals for transitions, ACES should not be working on them. Quickly move to older students with younger students. Dr. Sprouse, the points witness, admitted that when it's anything other than academic, if it's dealing with social skills, older children and younger children should not be together. I'm going to interrupt you a minute. I want to go back to a point that Judge Hawkins raised right from the beginning. Let me understand, is there any concern on the parents' part or anybody's part that in the future, any one point would think of placing AT at ACES? Oh, they have expressed that should they prevail, that he will be sent back to ACES, which is what happened at the district level immediately after the judge reversed the ALJ. They tried to put the child back at ACES until I filed the appeal so we had to stay put. You're down to about three minutes. Do you want to save some for rebuttal? I do, but quickly, I'm just going to address the last issue. It's your time. Use it as you wish. I know. I appreciate it, and I do want to save two minutes. The more severe behavior. Judge Wake seemed to agree that AT had woefully less behavior issues than other students at ACES. But then he went on to say, but, you know, ACES can accommodate him along with those children. The analogy I look at it is if you have a person that's a pickpocket, yes, they could go to a maximum security prison. Would they, in fact, be incarcerated there? Sure, they could be incarcerated there. Would it be appropriate? No, it wouldn't. And in this case, having children with so many more severe behaviors could be harmful to the child. And under, lastly, under 34 CFR 300-116, consideration must be given to potential harmful effects on a student. So thank you, and I'll see you in a couple minutes. You have almost two minutes, and you've saved it for rebuttal. Mr. Martin. Your Honor, it's actually Todd Karchner. Oh. Mr. Martin went in-house to another school district, and I made a notice of appearance recently, but thank you for your time today, Your Honors. With respect to your prior question, Your Honor, about the school's position long-term with respect to the Aurora decision and ACES, really its primary focus is to ensure that a school district's placement, as long as it complies with the IDEA, is upheld. And that can have a number of consequences, not just to this particular school district, but to all school districts in Arizona. And for that reason, it is important to the school district to uphold that decision. And the Gregory K case, which we cite, indicates that the focus needs to be on what the school district recommends and not on a comparison, not on the alternative that the parent suggests. And so from that standpoint, that's why we're focusing on the school district's recommendation. Now, just a number of points in responding to appellant's positions. She raised the fact that Judge Wake indicated that she may not have extensive experience with some of these special education matters. He did note potential lack of experience, but there's nothing in his decision that indicates that that's what his decision turned on. It was something that he noted in passing, but there's nothing. He really focused on what he perceived as the gaps in the record from a factual standpoint. Now, with respect to appellant's argument that there was not a placement available at ACES at the time, the record does indicate that a teacher had been hired at that point. And that's the case. Let me interrupt you a minute before we get into the different views of the facts. The standard of review here does not give much deference, and we're aware of that. But one of the reasons it doesn't is because the district court retains the right to call witnesses and hold a hearing, which was not done in this case. What do you say about that? The fact that the district court reversed . . . there had been a two-day hearing down below. Witnesses were called. The ALJ had a chance to assess credibility.  Does that trouble you at all? Well, Your Honor, there wasn't a full evidentiary hearing, but there was a hearing on the summary judgment motion itself where both sides had an opportunity to present an oral argument. But no live witnesses in district court. I'm sorry, Your Honor? No live witnesses in district court. No, Your Honor. That would be correct. As lawyers talking to each other and to the court, but there weren't any witnesses while down before the ALJ, he heard the witnesses assess their experience, their credibility. Does that trouble you at all? No, Your Honor. In this case, the court did have access to the full administrative record. And then the other issue was as Judge Wake went through and identified the points that troubled him, he indicated the gaps in the record where the ALJ, for example, just by way of one example, one of the issues that the ALJ had determined was that there was excessive transitions. Now, based on the evidence that was presented to the ALJ, and this was in the record, she had testimony from Dr. Katie Sprouls, who is a Ph.D. in psychology who has specialized training in curriculum for special education and has an awareness of the latest techniques and trends in that area, indicated that when you have a student who struggles with transitions, in this case the record indicated that the student had struggled 40 percent of the time with transitions, that that's something you want to address, not ignore. But Sprouls never met with A.T., did she? No, she did not. But she was familiar with his IEP. She was familiar with his record. And in contrast, in addition to Dr. Sprouls, we also had testimony from the ACES, school psychologist Gay Hardy. Now, opposing that, we had testimony from the advocate, which is apparently what the ALJ relied on. The advocate admitted that she had no expertise in education, psychology, or in any relevant topic, and she found the transitions alarming. Now, she was also talking from the record. It was clear that she was talking from a global perspective. She may have known the student individually, but her comments were of a global nature and were not really specifically targeted at the student. And the ALJ never put in the record why she would credit this testimony over that of two psychologists who had experience and relevant background in making these type of determinations. The issue before the ALJ, the reason this went to an ALJ, was to determine whether ACES would meet the student's particular needs, correct? Correct, Your Honor. And did the district court limit its decision to just that? Did the district court go beyond and find that Gateway was appropriate? Well, here the court had determined because ACES was appropriate that the focus was improperly on Gateway. I think the court noted that, really, there was an improper comparison being made between ACES and Gateway, when, in fact, the issue that was before the ALJ was just whether ACES was an appropriate placement. And because there was, in fact, a comparison that's really violative of the holding where the emphasis needs to be on what the school district is recommending and whether that meets the IDA and not how it comes out in a comparison with another recommendation. Counsel, I think you're right on the law, certainly, on that point. But can I just ask from just more of a real-world perspective, what was the resistance on the school district's part to Gateway? I mean, what's so special about ACES in terms of shunting the student off to that choice? I just didn't understand why the school district was so insistent that the kid must go to ACES, even though there seemed to be this other. . . I think most people objectively looking at it would say there's a preferable alternative. Why was the school district so insistent? I think there were a couple of considerations there, Your Honor. First of all, the school district is familiar with ACES' track record, which has an impressive track record of not only having people transition successfully through their program but then successfully come back out into the general education program, which is something that all school districts have as the main goal in mind. And because of that track record and because of their success and their prior experience with it, that was something that was important to them and that they focused on. And then, again, from an appellate perspective, as we're sitting here today, as I mentioned before, the underlying issue for the school district that it just wants to ensure is that the case law is upheld that when a school district's recommendation is compliant with the IDEA, that it is upheld as opposed to overturned for purposes of a comparison and that the parents are not permitted, despite their best hopes and objectives and motivations, to be able to put a veto on the school district's recommendation as long as they are compliant with the statutes. Okay. Your Honors, with regard to, again, going back to the availability, the primary consideration is just whether it's going to provide a meaningful educational benefit. And one of the cases that the student cited earlier in its papers, it was a Phoenix Elementary School District case that was an ALJ decision, and certainly that's not binding on the Court, but it is persuasive. And one of the things that it noted in there is there's going to be bumps in the road as far as programs go. Sometimes teachers will have to be replaced. Sometimes there will be substitutes. Sometimes there might be a few days' delay. But really the emphasis is on whether a meaningful educational benefit is provided. And here, where we had a teacher that was already hired, and although Ms. Hardy may not have been 100% certain that it was going to start next week, she was relatively certain that that program was going to be in place shortly. Because we did have that evidence on record, that wasn't something that should have been a concern or something that was denying the student a meaningful educational benefit. I've already spoken a little bit about the transition issue. With respect to older students and younger students being in the same classroom, Dr. Sproul's testimony is being misstated a little bit here. She did admit that older students shouldn't go with younger students for purposes of social or behavioral issues, but she did indicate that for academic settings, for things like reading and other things, it was appropriate, it was common, it was something that was appropriate. And ACES indicated that the only time that would happen, and there was no evidence that it would happen, first of all. There was a remote possibility that it might. But if it did, it would be simply for something academic like that and not from a social or behavioral perspective. And from that, it was not inappropriate at all. And then finally, with respect to this idea that somehow ACES was some kind of penitentiary, that's not the case at all. Although it did deal with students who did have some severe behavioral issues, it dealt with an entire range of people with behavioral issues. And we had testimony from Gay Hardy, the ACES school psychologist, that they dealt with disruptive behavior just like student was presenting and that they had a program for students with autism just as student presented. And because they were used to dealing with students of this type, the fact that there may have also been on the campus people at times that may have had more severe problems did not indicate that they were not in a position to appropriately address students' needs. And, in fact, they noticed, Ms. Hardy noticed that it was a safe place, that any students who did have severe problems were closely monitored, and that they did keep younger students apart from older students, that K through 6 was in one part of the school and that older students were in another section. And there was no evidence that there was any kind of safety problem for the student. And I see my time is at an end. Excellent timing. You hit it right on the number. Thank you, Your Honor. Thank you for your argument. Were Hill a rebuttal argument in this case? Thank you, Your Honors. First, I'd like to point out, as Judge Rothstein had mentioned, with the Amanda Jay case, Judge Wake did not seem to appreciate Kim Yamamoto, the special advocate's testimony. And in Amanda Jay, the Court recognized that the ALJ is the one that hears the testimony that is present to determine credibility. And Kim Yamamoto came off very credible and knows the child, knows the IEP, and knows the schools. Unlike Dr. Sprouse, who came in, admittedly, on her own admission, that she came in only to, at the very end, to look at the evaluations of the child. She did not know AT, and she was not really familiar with his IEP. When she was questioned about the IEP and transitions, she admitted that, you know, you'd have to look hard, but it might be, and that's a quote, might have issues with transitions. So I think that's important to note. And, again, the ALJ made those credibility determinations. The transitions back to public school, that was testified to at the due process hearing. Robin Sweet testified that a lot of the children do go back to. So that shouldn't have been a concern. This is not like the White case where the parents were trying to change placement or pick a school that was more social for their child and closer to home and could be with other children. It was for academic reasons. And, again, they weren't necessarily saying they needed Gateway. The ALJ chose it, and I believe that the ALJ chose it, after determining that ACES was, one, not appropriate, and, two, not available. It wasn't available, so where else could this child be placed? Well, we had testimony about Gateway, so she chose Gateway. Now he's not at Gateway because he's at a school similar to it, the point being that ACES was not appropriate. That little red light means you're done. I'm done. Thank you very much. Thank you for your argument. Let me ask counsel a question as you're exiting the courtroom. If it's at all possible that both your client and the parents would agree that Aurora is an appropriate place for AT to be, is this case capable of mediation? I believe that the problem is the attorney's fees at that point. Again, Your Honor, my client would like to establish the school's policy statement. Sounds like a no. Thank you both. Thank you. The case to start will be submitted for decision.
judges: Hawkins, Watford, Rothstein